CASE 77—ACTION BY A. E. WILLSON AGAINST W. Y. DAVIS, JR., AND
OTHERS TO RECOVER ON A NOTE AND ENFORCE A MORTGAGE LIEN—
MAY 26.

# Davis and Others v. Willson.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

JUDGMENT FOR PLAINTIFF AND DEFENDANT, W. Y. DAVIS, JR., AND
PLAINTIFF APPEAL. AFFIRMED.

CHAMPERTY—ADVERSE POSSESSION—CONTINGENT REMAINDER—RIGHT
TO MORTGAGE—PURCHASER PENDENTE LITE—SETTLEMENT OF A
SUIT—RIGHTS OF MORTGAGEE.

Held:    1. Defendant's grantor obtained a decree whereby a part of
his life estate was conveyed to him in fee to offset certain
amounts his guardian had expended out of his fee in improving
the life estate, but he did not make two of the remaindermen,
who were then infants, parties to this suit. The property thus
conveyed by the decree was thereafter conveyed to grantor, who
took possession thereof, and, when the remaindermen had at-
tained their majority, sued them to quiet his title. One of the
remaindermen employed plaintiff as her counsel in this suit,
and gave him a mortgage on her interest in the estate to secure
his fee. A decree for defendant was reversed on appeal, and
the claims of his opponents upheld, unless he could make a cer-
tain showing on a new trial. No retrial of the suit was had, but
instead a settlement was effected, and an agreed judgment en-
tered, quieting defendant's title to the premises. HELD, that at
the time of giving the mortgage defendant's possession was not
adverse to that of the mortgagor, he holding possession as a life
tenant of the particular estate supporting the mortgagor's re-
mainder, and therefore the mortgage was not champertous and
void under Kentucky Statutes, 1899, chapter 15, sections 209-216,
making champertous contracts for the recovery of lands held
adversely for the whole or part of the lands thus possessed.
2. Under Kentucky Statutes, 1899, section 2341, providing that any in-
terest in real estate may be disposed of by deed or will in writ-
ing, a contingent remainderman can mortgage her interest.
3. Defendant sued to quiet title to certain property against parties
who claimed a contingent remainder interest therein, and one
of these claimants engaged plaintiff as her counsel, giving him
a mortgage on her interest as security for his fees. A decree in

Davis and Others v. Willson.

favor of defendant was reversed on the ground that he had only a life estate as against his adverse claimants, unless he could make a certain showing on a retrial. The suit was not retried, but defendant effected a settlement with his adverse claimants, without notice to plaintiff, whereby they agreed to a judgment quieting his title to the premises. Subsequent to this settlement the contingency on which the remainder estate depended happened. HELD, that as the agreed judgment was not based on the grounds for relief relied on in the suit to quiet title, it was in reality only a quitclaim deed, and therefore plaintiff was not bound by it as a pendente lite purchaser, but could assert his rights under the mortgage against defendant.

4. An attorney agreed to act for one of two defendants in a suit to quiet title to an estate in which they claimed an interest, and took a mortgage on his client's interest as security for his fees. The suit was never finally determined on its merits, but a settlement was effected by the parties, and an agreed judgment was entered in favor of plaintiff therein. HELD, that the attorney's mortgage did not cover more than his client's actual share in the consideration for the settlement; though she was in fact paid the whole sum.

SIMRALI & DOOLAN, FOR APPELLANTS.

### POINTS AND AUTHORITIES.

1. The mortgage sued on by appellee in this case is champertous and void, for the reason that at the time it was executed by Mrs. Caldwell, the mortgagor, W. Y. Davis, the ancestor of the appellants, was in adverse possession of the property mortgaged, claiming it as his own adversely to all the world. In fact, the appellee was employed to defend such adverse claim of fee simple title, and no rights could accrue to him under the mortgage sued on in this case. Ky. Stats., secs. 210-216.

2. Even if the mortgage sued on by appellee were not champertous, still, as a lis pendens mortgagee, appellee would be bound by any judgment rendered in the case of Davis v. Jacob, No. 42128, which had been brought prior to the making of such mortgage. This is certainly true in the absence of any showing of fraud or bad faith in the rendition of such judgment.

3. If the appellants are to be regarded as purchasers of the claim or interest of Mrs. Caldwell for the sum of $500, then it appears by stipulation filed in this case that they became such purchasers in January, 1898, for value and without actual notice of appellee's mortgage claim.

The mortgage to appellee, being a mortgage of a chose in action, was not a recordable instrument, and the recording

thereof did not give constructive notice of its contents or even of its existence. Bank of United States v. Huth, 4 B. Mon., 448-9; Van Meter v. McFadden, 8 B. Mon., 442.

4. The appellee has no claim of lien under the attorney's statute in a case like this where he is employed merely to defend a suit to quiet title; besides he has not attempted to assert any claim of statutory lien in this case. Ky. Stat., sec. 107; Wilson v. House, 10 Bush, 406.

5. Whatever may be the view of the court as to the questions raised on the original appeal, it is clear that the appellee upon his cross-appeal is not entitled to more than the court below awarded him.

The only competent evidence in this case as to the value of Mrs. Caldwell's claim at the time it was extinguished by a settlement between her and the Davis heirs is to be found in the agreement or settlement made at that time. All the proof offered by appellee in support of his contention is incompetent and irrelevant, because it relates to a later period of time, namely, the years 1900 and 1901, after the condition and status of the parties which existed in 1898 had been completely changed by the death of Charles D. Jacob, Sr., and Charles D. Jacob, Jr.

STANLEY E. SLOSS, FOR APPELLEE.

POINTS AND AUTHORITIES.

1. Charles D. Jacob had no power to sell more than a life estate; nor to improve the property for the benefit of the life estate, at the cost of the remainder; nor had the court power to compensate him for these expenditures out of that property in the old suit. Johnson v. Jacob, 11 Bush, 646; Caldwell v. Jacob, 16 Ky. Law Rep., 21; 19th St. Church v. Fithian, 16 Ky. Law Rep., 581; Johnson v. Stewart, 8 Ky. Law Rep., 857; Sparks v. Ball, 91 Ky., 502, and cases cited; Henry v. Brown, 99 Ky., 13; Springfield v. Bethel, 90 Ky., 593; Mayes v. Payne, 60 S. W., 710; 28 Ky. Law Rep., 1465; Gray v. Oyler, 2 Bush, 256.

2. Remaindermen were necessary parties. Johnson v. Jacob, 11 Bush, 646-55 to 61; Farr v. Gilreath, 23 S. C., 502; Mosely v. Hankinson, 22 S. C., 331; Leroy v. Charleston, 20 S. C., 71; Long v. Long, 62 Md., 67.

3. The trustee sued was not their trustee.

4. The vendee of life tenant can not hold adversely to the remaindermen. Smith v. Shackelford, 9 Dana, 475; Gregory v. Ford, 5 B. Mon., 475; Phillips v. Johnson, 14 B. Mon., 176;

Turman v. White, 14 B. Mon., 569; Simmons v. McKay, 5 Bush, 31; De Coursey v. Dicken, 1 Ky. Law Rep., 260; Mays v. Hannah, 4 Ky. Law Rep., 50; McIlvaine v. Carter, 9 Ky. Law Rep., 599; Gudgell v. Tydings, 10 Ky. Law Rep., 737; Berry v. Hall, 11 Ky. Law Rep., 30; May v. Scott, 12 Ky. Law Rep., 248; Tucker v. Price, 17 Ky. Law Rep., 11; Jeffries v. Butler, 22 Ky. Law Rep., 226; Davidson v. Kelly, 64 S. W., 623; 23 Ky. Law Rep., 1011.

5. No adverse possession under champerty statute. Castleman v. Combs, 7 Mon., 273, at 276-279; Griffith v. Dicken, 4 Dana, 561, at 563; Baley v. Deakins, 5 B. Mon., 161; Barrett v. Coburn, 3 Met., 513; Jones v. Chiles, 2 Dana, 35; Ross v. Veech, 58 S. W., 475; 22 Ky. Law Rep., 578; Moore v. Baker, 92 Ky., 518; Baley v. Deakins, 5 B. Mon., 161; Jones v. Chiles, 2 Dana, 35; Berry v. Hall, 11 Ky. Law Rep., 30; Simmons v. McKay, 5 Bush.

6. There is no lis pendens against Mr. Willson on account of the delay. Wallace v. Marquette, 88 Ky., 100; Ehrman v. Kendrick, 1 Met., 149.

7. The judgment was not rendered on any ground asserted in the record when Mr. Willson took his mortgage, and the only cause of action which had then been asserted was held bad by this court. There was, therefore, no lis pendens. 2 Van Fleet on Former Adjudication, secs. 539-549-586; Pearson v. Keady, 6 B. Mon., 128; Stone v. Connelly, 1 Met., 652-671; Watson v. Wilson, 2 Dana, 406; Clarkson v. Morgan, 6 B. Mon., 441-6-7-8-9, 450-1; Wassery v. Scarborough, 3 Atkins, 392; Ehrman v. Kendrick, 1 Met., 149; Stone v. Connelly, 1 Met., 552; Hawes v. Orr, 10 Bush, 430-7; Bamberger v. Moayan, 91 Ky., 517-521.

8. As the remaindermen were not parties to the old suit to remove their property from the trust to compensate the life tenant, they are not bound by the judgment. Nor had the court power to grant such relief. Caldwell v. Jacob, 16 Ky. Law Rep., 21; Jacob v. Johnson, 11 Bush, 646.

9. The judgment rendered by consent in suit No. 42128 after reversal by this court (Caldwell v. Jacob, supra) was collusive, fraudulent and void against Mr. Willson. It was a mere device to convey land. Judgment does not bind a stranger. Lovelle v. Clark, 18 Ky. Law Rep.; Shadburn v. Jennings, 1 Mar., 179; Clary v. Marshall, 5 B. Mon., 266-273; Doyle v. Armstrong, 2 Dun., 534; Alexander v. Stevens, 7 B. Mon., 351, at 356; McChord v. McClintock, 5 Litt., 305; Memphis, &c., v. Grey, 9 Bush, 137, at 148; Sutton v. Pollard, 96 Ky., 640; Feltman v. Butts, 8 Bush, 115, at 120; Blight v. Banks, 6 Mon., 192, at 224; Rothchild v. Kohn, 93 Ky., 107; Brown v. Moore, 80 Ky., 443-449;

Davis and Others v. Willson.

Adams v. Halbert, 13 Ky. Law Rep., 637; Ricketts v. Hamilton, 16 Ky. Law Rep., 351-762; Georgetown Water Co. v. Cen. Thompson Co., 16 Ky. Law Rep., 124.

10. Mr. Willson, as we have shown, was not a lis pendens purchaser. He was given no notice. Judgment was rendered in favor of Davis by consent, on the same record this court had held did not entitle him to the relief granted, or to any relief.

11. The agreed judgment does not fix the value of the land as to him.

12. He has a mortgage lien to secure his fee, and whatever amount the mortgagor received for the land must be taken and treated as paid for the equity of redemption; i. e., as being in addition to an agreement to pay off the mortgage out of the land. Potter v. Ajax Mining Co., 61 Pac., 999; 1 Jones on Mortgages, secs. 736, 740; Shuler v. Hardin, 25 Ind., 387; Delaware, &c., v. Bonnell, 46 Conn., 9; Russell v. Allen, 10 Paige, 249; Vanderkemp v. Shelton, 11 Paige, 28; Lovelace v. Webb, 62 Ala., 271; Lord v. Dudley, 3 Met. (Mass.), 147; Bowser v. Patrick, 23 Ky. Law Rep; Lufburrow v. Hicks, 66 Pac., 602; Potter v. Ajax Mining Co., 61 Pac., 999, at 1002; Russel v. Dudley, 3 Met. (Mass.), 147.

13. The judgment is a purchase subject to a lien for attorney's fees secured by mortgage. Hubbel v. Dunlap, 19 Ky. Law Rep., 656; L. & N. v. Proctor, 21 Ky. Law Rep., Skaggs v. Hill, 12 Ky. Law Rep., 382; McIntosh v. Booh, 62 S. W., 515; Potter v. Ajax Mining Co., 61 Pac., 999; Flint v. Hubbard, 66 Pac., 446; Lufburrow v. Hicks, 66 Pac., 602; Reid v. Punch, 2 Ky. Law Rep., 61.

14. The mortgaged interest was really worth the amount of the mortgage and more than the amount paid.

OPINION OF THE COURT BY JUDGE BARKER—AFFIRMING.

John I. Jacob, by his last will and testament, devised to his son, Charles D. Jacob, a large estate in fee simple, and also real estate in the city of Louisville, Ky., worth the sum of $30,000, in trust to him for life, with remainder to his children living at the time of his death. At the time of the death of his father, Charles D. Jacob was an infant, and his guardian, in order to improve his trust estate, instituted an action in the Louisville chancery court, and therein obtained a decree authorizing the sale of a portion of his ward's fee-simple estate, and the right to invest the

proceeds in improving the trust estate in order to increase
its productiveness. Under this decree about $13,000 worth
of the fee-simple estate was sold, and invested in improving
a part of the trust property situated at the corner of Fourth
and Main streets, in Louisville, Ky. After reaching his ma-
jority, Charles D. Jacob became dissatisfied with the in-
vestment made by his guardian, and instituted an action
in the Louisville chancery court against all parties in in-
terest except his two daughters, Mrs. I. P. Caldwell and
Miss Lucy D. Jacob, who were then infants. In this ac-
tion a decree was rendered refunding to the fee-simple es-
tate the sum that had theretofore been taken from it to
improve the trust estate, and for this purpose a house and
lot at the corner of Third and Main streets, belonging to
the trust estate, and which was supposed to be about equal
in value to the sum taken from the fee-simple estate to
improve the trust property, was conveyed to Charles D.
Jacob in fee simple by the commissioner of the court. This
lot he afterwards improved by building a new business house
thereon at an outlay of $27,000 from his fee-simple estate,
and later conveyed the lot and improvements to W. Y.
Davis for the sum of $36,000, with covenant of general war-
ranty. Subsequently, W. Y. Davis, learning that the chil-
dren of Charles D. Jacob were claiming to be owners of the
reversion of the property sold to him, instituted an action
in the Louisville chancery court against them for the pur-
pose of quieting his title. Upon the institution of this ac-
tion, Mrs. I. P. Caldwell and her husband employed the
plaintiff, A. E. Willson, who is an attorney of the Louis-
ville bar, to defend the action; the sum of $1,500 was agreed
upon as a fee for his services to be thereafter rendered, for
which they executed and delivered their promissory note,
to secure which Mrs. Caldwell and her husband, I. P. Cald-

well, executed, acknowledged and delivered a mortgage up-
on her interest in the property involved in the litigation,
which was recorded by the clerk of the Jefferson county
court in his office. Upon the trial of the case in the court
below the chancellor rendered a decree sustaining the
prayer of the petition, and quieted the title of W. Y. Davis
to the property. From this judgment an appeal was tak-
en, and the case reversed in an opinion to be found in 15
R., 21, 22 S. W., 436, 27 S. W., 86. In this opinion it was
decided by this court that the life tenant, Charles D. Jacob,
had no right to have refunded to him out of the trust prop-
erty the money which his guardian had taken out of his
fee-simple estate to improve the trust estate, and that as
his daughters, Lucy D. Jacob and Mrs. I. P. Caldwell, were
not parties to the action instituted by him for the purpose
of obtaining the decree by which this refunding was author-
ized, they were not bound by it. The court further said
that, if it could be made to appear that the trust estate had
not been injured by the whole transaction, and that there
still remained to the contingent remaindermen the $30,000
worth of property devised to them in remainder by their
grandfather, with its natural increase in value, then W.
Y. Davis would be entitled to a decree quieting his title.
After the case returned to the lower court, no further steps
were taken for several years, W. Y. Davis making no effort
to establish the fact that the trust estate had not been de-
preciated by the action of Charles D. Jacob in taking from
it the house and lot at Third and Main streets. After the
lapse of three or four years, without notice to appellee,
W. Y. Davis made a settlement with the contingent re-
maindermen, by which he paid to them the sum of $1,000,
in consideration of which sum they signed and delivered to
him an agreed judgment quieting his title to the property

in question in accordance with the prayer of his petition. Subsequently Charles D. Jacob died, and A. E. Willson instituted this action in the Jefferson circuit court, chancery division, for a judgment on this note, and an enforcement of his mortgage lien by which its payment was secured. In bar of the action W. Y. Davis pleaded, first, that at the time of the execution of the mortgage he was in actual adverse possession of the property, claiming it as his own adversely to all the world, and therefore the mortgage was champertous and void; second, that appellee was a pendente lite purchaser, and consequently bound by the judgment rendered in the action to quiet the title to the property mortgaged; third, that appellant had no notice of appellee's mortgage at the time he settled with the contingent remaindermen, and that appellee's mortgage, being a chose in action, was not a recordable instrument, and therefore did not give constructive notice of its contents or existence to appellant.

Under the deed from Charles D. Jacob, W. Y. Davis took such estate as the grantor had power to dispose of, which was a life estate. The life tenant's holding is not adverse to the remaindermen, but, on the contrary, is amicable to them; the possession of the life tenant being the possession of the remaindermen. At common law a remainder could not be created without a particular estate to support it, the reason being that an estate of freehold of inheritance could not be created without livery of seisin or delivery of possession; and therefore it was necessary that there should be a tenant of the particular estate to whom livery of seisin could be made, the possession of the tenant of the particular estate being the possession of the remainderman. That the life tenant does not hold adversely to the remainderman is so elementary as hardly to need citation of author-

ity. Smith v. Shackelford, 9 Dana, 475; Gregory v. Ford, 5 B. Mon,. 475; Phillips v. Johnson, 14 B. Mon., 472; Turman v. White, Id., 560; Simmins v. McKay, 5 Bush, 31; De-Coursy's Adm'r v. Dicken, 1 Ky. Law Rep., 260; Mays v. Hannah, 4 Ky. Law Rep., 50; McIlvain v. Parter, 9 R., 899, 7 S. W., 309, 8 S. W., 705; Gudgell v. Tydings, 10 R., 737, 10 S. W., 466; Tucker v. Price, 17 R., 11, 29 S. W., 857; Berry v. Hall, 11 R., 30, 11 S. W., 474; May v. Scott, 14 S. W., 191; Davidson v. Kelly, 23 R., 1011, 64 S. W., 623. As appellant's holding was amicable to the remaindermen, the contract by which Mrs. Caldwell conveyed her interest in the land, by mortgage, to appellee, was not champertous under the provisions of chapter 15, sections 209-216, of the Kentucky Statutes of 1899. She had the right to mortgage her contingent interest. Section 2341 of the Kentucky Statutes of 1899 provides: "Any interest in, or claim to, real estate, may be disposed of by deed, or will, in writing." In construing this section, this court, in the case of the Bank of Louisville v. Baumeister, 87 Ky., 6, 9 R., 845, 7 S. W., 170, said: "And that the right to dispose of such interest or claim was intended to include the right to mortgage, as well as to sell absolutely, is unquestionable; for it is well settled that every kind of interest in real estate may be mortgaged, if it be subject to sale and assignment. Jones on Mortgages, section 136." The court then held that an option upon real property was such an estate as was subject to sale and mortgage. In the case of Overton v. Means, 2 Ky. Law Rep., 211, this court said: "Whether an interest by devise in lands is vested or contingent, it is vendible, and subject to sale for the satisfaction of debts." In the case of White's Trustee v. White, 86 Ky., 603, 9 R., 757, 7 S. W., 26, it is said: "It is contended that by the common law the contingent remainder could not be sold by

a decree of court for the reason that the decree could operate on the title only, and, as no title passed to the contingent remaindermen, until the happening of the contingency, there could be no sale in the interim by a decree of court. But section 6, art. 1, c. 63, Gen. St. (section 2341, Ky. St.), provides: 'Any interest in, or claim to, real estate may be disposed of by deed, or will, in writing.' This provision clearly embraces a contingent remainder interest in the land." To the same effect is McAllister v. Ohio Valley Banking & Trust Co.'s Assignee, 114 Ky., 540, 24 R., 1307, 71 S. W., 509.

As the interest of the remaindermen was subject to mortgage appellant had constructive notice of the existence of appellee's lien from the time of the recording in the county clerk's office. Undoubtedly, the general rule is that a pendente lite purchaser is bound by the judgment rendered in the case pending at the time of purchase; but this rule is subject to this modification: that the right of the purchaser is subservient only to the cause of action pending at the time of his purchase, and is not affected by a cause of action set up subsequent to his purchase. Van Fleet, in his work on Former Adjudication, vol. 2, section 586, p. 1116, declares the rule as follows: "A lis pendens purchaser is not affected by a decree made on new matter incorporated into the bill by way of amendment after his purchase." See, also, Freeman on Judgments, sections 199 to 202, inclusive. In the case of Stone & Warren v. Connelly, 1 Metc. (Ky.), 652, 71 Am. Dec., 499, in discussing the precise question involved here, it was said, in the opinion: "It is argued on the part of the appellants that a lis pendens was created by the filing of the original petition and the service of the process thereon; and that, as the object of the action, from its commencement to its conclu-

sion, was to subject to sale the house and lot in the plead-
ings mentioned for the payment of the debt due to the
plaintiffs, the alienation of the property during the pen-
dency of the action was unauthorized, and that the pur-
chaser is affected in the same manner as if he had actual
notice of the proceeding, and in every respect occupies the
attitude of a pendente lite purchaser. The general rule is
that a person who purchases during the pendency of a suit
is bound by the judgment that may be rendered against the
person from whom he derives title. The rule, however,
does not operate to annul the conveyance, but only to ren-
der it subservient to the rights of the parties to the ac-
tion. The original petition was a proceeding in rem to
subject real estate to the payment of the plaintiffs' demand.
The jurisdiction of the court to furnish the relief sought for
was based and depended upon the allegation that the debt-
or intended to make a fraudulent disposition of the at-
tached property. As that allegation was not sustained by
proof, the court had no power on that ground to order a
sale of the property, nor were the plaintiffs entitled to
any relief on their original petition. The purchase was
made during the pendency of the litigation, under the or-
iginal petition. The purchaser held subject to the result of
that litigation, and subservient to the rights of the plain-
tiffs arising out of it. As, however, the plaintiffs were not
entitled to a judgment upon the matters then in litigation,
are the rights of the purchaser to be affected by another
distinct ground of equitable relief, which was subsequent-
ly asserted by them in an amended petition? An entirely
new lis pendens was created by this amendment. By it the
plaintiffs' right to come into a court of equity was placed
upon a different and distinct ground. It did not operate
as a continuation of the original equity which had been re-

lied on, but asserted an additional and independent ground of equitable relief. It presented an entirely different state of case, and amounted, substantially, to a new cause of action. The lis pendens which it created can not be permitted to relate back to the commencement of the action, so as to affect intervening rights."

The judgment obtained in this action was not based upon the ground for equitable relief set up by appellant in his action against the remaindermen; on the contrary, this court decided adversely to him on the issues raised by his pleadings. It is true that the court in the opinion said that if, when the case went back to the lower court, it could be shown that the trust estate of the remaindermen was in *statu quo* (that is, that it remained intact with its natural advancement in value), then, in that case, a judgment quieting the title might be rendered; but this state of facts was never set up by amended pleading, nor was it attempted to be shown by the evidence. Instead of doing this, appellants purchased the interest of the remaindermen by the payment of money, and the agreed judgment entered in pursuance of this contract was, in effect, nothing more than the purchase of a quitclaim deed from them. This newly purchased title to the land of the remaindermen can not be allowed to relate back as so to defeat the claim of appellee acquired years before.

We think the chancellor adopted the correct basis in estimating the value of the interest of Mrs. Caldwell. Appellee could not acquire a greater interest than his mortgagor, and as the parties, by their own agreement, fixed the value of the interest of both the remaindermen at $1,000, Mrs. Caldwell's interest was justly placed at $500. It does not alter the status of matters to show that Mrs. Caldwell actually got the whole sum of $1,000 paid for the

outstanding interest.  As a matter of law, she was only entitled to one-half this sum, and this must be considered as the real value of her interest, and the value of her interest must limit the right of appellee's recovery under his mortgage.

Wherefore the judgment of the chancellor, both upon the original and cross appeals, is affirmed.