## Turner, et al. v. Johnson's Executors, et al.

(Decided October 30, 1914.)

### Appeal from Montgomery Circuit Court.

1. Deeds—Contingent Remainder.—The rule is well settled that where the devise or grant over is to the children of a life tenant, although they may not be named, or to the children, naming them, they take a vested estate in remainder; but if the devise or grant over is to the heirs of the life tenant, unless the word "heirs" means "children" the heirs take only a contingent remainder subject to be defeated by their death before the death of the tenant.

2. Deeds—Remainder—When Contingent.—Where real estate was conveyed to the grantor's daughter for life, and is then "to descend to the heirs of her body in fee simple," the remaindermen took an estate contingent upon their surviving their mother; and a child who died before his mother died, took no estate whatever in the land.

JOHN A. JUDY for appellants.

W. B. WHITE for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Granting rehearing and reversing.

In 1861 Denman Highland and Susannah, his wife, of Montgomery County, conveyed to their daughter, Mariah H. Boyd, in consideration of their love and affection for her, fifty acres of land valued at $46.00 per acre; a negro girl Eunice, valued at $400.00; money and other property to the amount of $300.00; making in the aggregate property of the value of $3,000.00. Said deed contained the following *habendum* clause:

"Which property the above named Mariah Boyd of the second part is to have and to hold to her sole use and benefit for the period of her natural life free from the control or liabilities of her present husband or any other husband with whom she may wed; the negro girl and all her increase and the money and other property is to descend to the heirs of her body in fee simple; the parties of the first part covenant with the party of the second part and her heirs that they are seized with a good and indefeasible title, which they now convey in trust to her and in fee simple to her heirs as above named."

Again, in 1867, Denman Highland and his wife con-

veyed to their daughter, the said Mariah H. Boyd, in consideration of their love and affection for her, "in fee simple upon the conditions hereinafter set forth," 26 acres of land in Montgomery County, valued at $826.75.

Said second deed contained this *habendum* clause:

"The said Mariah H. Boyd is to have and to hold the land hereby conveyed for her sole use and benefit, for and during her natural lifetime free from the control or liabilities of her present husband, or any other husband she may have; at her the said Mariah H. Boyd's death, the same is to descend to the heirs of her body in fee simple.

"The aforesaid conveyance is made under a covenant of general warranty to the said Mariah H. Boyd and her heirs by the said Denman Highland and Susannah Highland."

At the time of the execution of the two deeds above referred to Edgar Boyd, who was a son of Mariah H. Boyd, was living.

In 1893, while Edgar Boyd was still living, his creditor, Thomas Johnson, by a suit in equity, sold the interest of Edgar in the two tracts of land above described for the payment of a debt of $137.28 which Edgar owed Johnson. Johnson procured a commissioner's deed for Edgar's one undivided one-fourth interest in said land, subject to the life estate of his mother.

In 1902 Edgar died, leaving the appellants, who were the plaintiffs below, as his children and heirs-at-law.

In March, 1913, Mariah H. Boyd died intestate, leaving three children, and the children of her son Edgar, as her heirs-at-law.

On September 10, 1913, the appellants, claiming to be the owners of an undivided one-fourth interest in said two tracts of land, brought this action against the defendants, who are the executors and heirs-at-law of Thomas Johnson, deceased, praying that their title thereto be quieted, and that the deed of the commissioner to Thomas Johnson, purporting to convey the undivided one-fourth interest of Edgar Boyd, be declared void and of no effect.

The chancellor being of opinion that Edgar Boyd took a vested estate in remainder and not an estate in remainder contingent upon his being alive at the death of his mother, held that Edgar's interest passed by the commissioner's deed to Johnson, and dismissed the petition. The plaintiffs appeal.

The decision of the case turns upon the single question as to whether the estate of Edgar Boyd was a vested remainder, or was contingent upon his surviving his mother. If it was vested, the judgment of the chancellor is right; if contingent, the interest that Edgar would have taken upon his surviving his mother passed directly to his children, the appellants, upon the death of their grandmother, Mariah H. Boyd, the life-tenant, in 1913.

Upon the original hearing the judgment of the chancellor was affirmed by an equally divided court, Judge Turner not sitting. 159 Ky., 46.

Upon a petition for a rehearing, the whole court, Judge Turner not sitting, has reconsidered that ruling, and has reached the conclusion that it is not sustained by the decisions of this court.

The two deeds are substantially the same in so far as the estates conveyed are to be considered; under each deed Mariah took an equitable separate estate, for life, the remainder "to descend to the heirs of her body in fee simple."

Appellants rely principally upon Williamson v. Williamson, 18 B. M., 366, which construed the will of Genl. James Taylor, of Newport. Mrs. Williamson was the daughter of Genl. Taylor.

In the Williamson case the will contained this provision:

"The tracts or lots which I give to my daughters they are to have, hold and enjoy the rents and profits of the same for their separate and sole use during their natural lives, and at their deaths the title to the same is to vest in their heirs in fee simple."

One of the principal questions there presented and decided related to the nature and character of the estate which Genl. Taylor had devised to his grandchildren.

On the one hand it was contended that the devise in remainder being to the *heirs* of the devisee for life, and the vesting of the title being restricted by the express words of the devise to the time when the life estate should terminate, the remainder was contingent and not vested, and consequently nothing passed by descent to the father of the two children of Mrs. Williamson, upon their death.

On the other hand, it was contended that the persons referred to by the testator, as the heirs of his daughters, manifestly were their children, who were the persons

entitled in remainder; and, as they were capable of taking at the time of the testator's death, the estate in remainder vested in such of them as were then living, and in afterborn children as they came into being.

In holding that the grandchildren of Genl. Taylor took a contingent and not a vested estate in remainder, the court said:

"The word 'heir,' in its strict technical sense, denotes the person on whom, at the ancestor's decease, the law casts the inheritance. During the life of the ancestor the heir must, therefore, be considered as a person either not in being or not ascertained, inasmuch as it is uncertain who will fill that character at the time of the ancestor's death. It would seem, then, to follow that a limitation to the heirs of a person in existence, if it have the other qualities of a remainder, must be a contingent remainder."

It is there further pointed out that the limitation referred to comes precisely within Fearne's fourth class of contingent remainders, where the person to whom the remainder is limited is not yet ascertained, nor yet in being. Fearne on Remainders, Chap. 1, Sec. 2, p. 5.

Applying the rule to the facts in the Williamson case, the court there said:

"Now, in this case, during the whole time of the continuance of the life estate, the remainder could take effect, if the possession were to become vacant, by the termination of the life estate, but it would be because the event which determined the life estate resolved the contingency, and rendered that certain which was before uncertain. But the estate in remainder, notwithstanding its present capacity to take effect in possession, if the life estate were to terminate, would be contingent and not vested. * * *

"But although the word 'heir,' in its strict legal sense, denotes the person upon whom the law casts the inheritance on the decease of the ancestor, according to the maxim that *nemo est haeris viventis,* yet sometimes a testator who devises to the heirs of a person in existence shows, by other expressions in the will, that he used the word *heirs* in a popular sense, to denote children, or the individuals who, at the time of the execution of the will, are the apparent heirs of a particular person. When such an intention is disclosed, the law will construe it in the sense intended by the testator, and the word being referred to persons, both in being and ascer-

tained, the limitation is not deemed contingent, but confers a vested remainder on the individuals designated.

"There is another class of cases in which the ancestor being recognized by the will *as living,* and other indications appearing going to show that the term *heir* was not used in its strictest sense by the testator, it has been held to mean the heir apparent of the ancestor named. (Harbison v. Beaumont, P. Wms. 229; Goodright v. White, 2 Wm. Black, 1010; Heard v. Horton, 1 Denio's R. Sup. C. N. Y., 165.)

"The signification of the word *heir,* in all cases, is a question of intention. The word has, as we have seen, a legal and a popular meaning. When used alone by a testator, without any other expressions going to show that it was not used in its legal sense, it must be understood as having been so used by him; for the rational presumption is that he understood the legal meaning of the words he has used. But if he use other expressions which clearly indicate what his intention was, and show that he did not mean what the word imports, in its legal acceptation, that intention must prevail, notwithstanding he has used the same word in other parts of the will."

The rule above laid down has been followed in many cases by this court, particularly in Johnson v. Jacob, 11 Bush, 646, which construed the will of John I. Jacob, of Louisville. The twelfth clause of the Jacob will directed that the estate set apart and allotted to the testator's daughters should be held in trust for them during their respective lives, and at the death of each daughter, her interest so held should "be conveyed and paid to her descendants or heirs as thereinbefore directed."

In speaking for the court, Judge Lindsay said:

"It is contended for Mrs. Pope and Mrs. Tyler, and for the heirs and representatives of John Jacob, deceased, the first two of whom are sisters, and the last-named of whom was the brother by the half blood of Isaac R. Jacob, that immediately upon the death of the testator, John I. Jacob, the estate in remainder in the trust property allotted to Isaac R. vested in those persons who were then his heirs apparent. The other parties appellant claim that the remainder was contingent, and that the absolute right to the estate did not vest until the death of the life tenant. We are of opinion that this latter proposition is the correct construction of the will under which all the parties claim.

"A vested remainder is a fixed interest, to take effect after a particular estate is spent. It is an actual estate, and may be sold and the right thereto passed to the purchaser by deed of conveyance. A contingent remainder is limited, so as to depend on an event or condition which is dubious and uncertain and may never happen or be performed, or not until after the determination of the particular estate. (Kent's Com., Vol. 4, pages 202, 205 and 206.) The fourth class of contingent remainders, according to the subdivisions of Mr. Fearne, is, 'where a remainder is limited to a person not ascertained or not in being at the time when such limitation is made.'

"The limitation in this case was made when the will of the testator became operative. It is plain that the particular persons who would take the estate upon the death of Isaac R. Jacob could not then be ascertained. Subsequent events have shown that some of them were not then *in esse*."

Without examining in detail the many cases which have announced and followed the rule of construction above laid down, it is sufficient to refer to the late case of Jones v. Thomasson, 159 Ky., 196, and 200, where the rule is formulated as follows:

"The rule is well settled that where the devise over is to the children of the life tenant, although they may not be named, or to the children, naming them, they take a vested estate in remainder; but if the devise over is to the 'heirs' of the life tenant, unless the word 'heirs' means children, the heirs take only a contingent remainder subject to be defeated by their death before the death of the life tenant. Williamson v. Williamson, 18 B. Mon., 329; White's Trustee v. White, 86 Ky., 602; Leppes v. Lee, 92 Ky., 16; Mercantile Bank of New York v. Ballard, 83 Ky., 481; Grayson v. Tyler, 80 Ky., 358; McAllister v. Ohio Valley Banking & Trust Co., 114 Ky., 540; Tanner v. Ellis, 127 S. W., 995."

See also Clubb v. King, 30 Ky. L. R., 830, 99 S. W., 935.

The cases above cited contain applications of the rule in both of its aspects; some of them holding that the deed or will used the word "heirs" in the sense of children, and that where such a conclusion could be reached from the reading of the entire paper, that construction would be given it which would make the estate in remainder vested, and not contingent. But where the

word "heirs" was used in its ordinary and technical sense, the remainderman's estate was contingent upon his surviving the life tenant. The rule is plain and well settled in this jurisdiction; it is only its application to the facts of particular cases that makes it often difficult to determine the character of the estate conveyed.

In the case at bar, however, there is nothing in the deeds before us to indicate that the word "heirs" as therein used, was intended to mean "children;" and consequently, Edgar Boyd took only a contingent estate in remainder, which was defeated by his death before the death of his mother, who was the life tenant.

It follows, therefore, that Johnson acquired no interest by his deed, and that the appellants, being the descendants and heirs-at-law of their father, Edgar Boyd, are the owners of the undivided one-fourth interest in said land which they now claim. Mercantile Bank of New York v. Ballard's Trustee, 83 Ky., 481; Bank of Taylorsville v. Vandyke, 159 Ky., 201, 206; and the cases there cited. The prayer of their petition should have been granted.

A rehearing is granted and the judgment is reversed, with instructions to the chancellor to enter a judgment as above indicated. Judge Turner not sitting.